Good morning. Mr. Flores, do you wish to reserve time for rebuttal? I would like to reserve, say, five minutes. All right. Thank you. Mr. Flores, let's go ahead and start, but I'm going to start with a question to start the time clock, please. The panel issued an order yesterday because we're seriously concerned about finality, which affects our ability to even decide this matter. Could you start by addressing the question of whether the order before us is final for appellate purposes? Yes. Strictly speaking, it's not a final order because the court, if it had ruled correctly, could have taken the case back and still, I mean, even if it had ruled incorrectly, like it has, excuse me, the other petitioner, C.T. or Copatalpa, we call it C.T. just because it's easier to say. If C.T. was still a viable petitioner who had been found in bad faith, then we could proceed against C.T. But the court had made it so clear during the hearing of the order that we're appealing that she believed that she had to unwind the whole thing, including C.T., which she later did after we filed our notice of appeal. We think it avoid action because it wasn't done under bankruptcy rule 8008. But I think that the court could consider that this court, the BAP, could consider her ruling an advisory ruling where she basically let the court know what she would do. The court has a chance here to resolve everything finally, once and for all, rather than just kick it down the road and have it be heard later because it wasn't yet final. So the court has indicated that it wants to find no one in bad faith. In that case, it would be a final order. Strictly speaking, the order she made after the hearing just addressed our motion, which was to other parties other than C.T., Mr. Azar, Mr. Shaheen, and 1429 Grant Avenue, add them as jointly liable with C.T., who had already been found liable. So strictly speaking, the motion and the order was not directed at C.T. and they would still be liable. But as I said, within a couple of weeks after this hearing and before our appeal could be heard, we decided that issue already. And like I said, we believe it's void because it was done when things should have been stayed due to our appeal. But we do have this advisory ruling from her that tells her what would happen if the court decided this wasn't final and sent it back for further proceedings. The court would then, the bankruptcy court would then determine that no one should be found in bad faith and we would have a final order. So rather than, for the sake of efficiency and rather than, you know, just kicking the can down the road, like I said, and doing it later, I think the court can consider this advisory opinion and can, under 158A3, actually potentially consider this, the court granted a leave for further time to file the appeal. And that could be considered leave of finality. The court actually did take action and allowed us further time to file this appeal, which so the court had a chance to weigh in and determine whether appeal should be brought at all. And the court impliedly said that it should have been allowed by giving us the time to, extra time to appeal. Was that issue directly presented to her? I don't, I don't remember seeing that. No, and then the other party hasn't raised the issue too. We both thought it was final order under 158A1. But, and for the reflection after the court sent us the order yesterday, I believe that it probably is not strictly speaking, but I think that it should be considered a final order by this panel to take up. You want us to grant leave to hear an interlocutory appeal? Yes. Okay. And I said, like I said, the court had a chance to consider she didn't, it wasn't expressly brought up by at the trial level, but if she thought that it was not a proper appeal motion or order, she might've said something then, but she didn't. And we didn't need it. And then the parties brought it up. Although I will say having had people appeal from what was clearly an interlocutory order as a trial judge, I don't say anything. I just go, that's interesting. So I rely on the appellate court to figure that out just between that. So I'm not, I guess what I'm saying is I'm not sure I would read a whole lot into her silence based on my own personal experience, but. At least consistent with the idea, if not broader. Okay. Dispositive. Okay. All right. All right. You may proceed. Okay. So we hope that the court will see that they, we've asked for two sorts of relief here. The first part is to basically overturn the ruling. Strictly speaking, this court, the trial court ruled that four different bases for denying our motion. It could have stopped at the first one and been done, but it didn't. Indication that she really wanted to get rid of this case. And so, so on a primary level, basic level, we'd like to see the court overturn that ruling and grant us the motion, but not just to remand it down, to be reheard again, but to actually take the next step and on the uncontroverted facts, find that we had proven that there should be joint liability among CT, who was already found in bad faith at the time of the motion. And if the court's familiar with the papers, then you know that the judge down below believe that she didn't, that she found, she discovered something new that would cause her to unwind the CT finding a bad faith. And we think that's just wrong for all the reasons we say in the paper. And I won't go over all those, but that, that alone is, so is the reverse and send it back down for, for the proceedings consistent with a finding that CT was without addressing the CT finding, because the, the idea that in the court's mind that she had to unwind everything prevented her from really considering our motion properly and, and prevented her from looking at the rest of the motion with an open mind. She was afraid that she was finding, going to compound her error by adding another party in bad faith when she now thinks that nobody should be in bad faith. And it was clear throughout the hearing, she would kind of say, well, it's kind of beside the point, or maybe this doesn't matter for the purpose of this, this hearing, but she, it clearly did matter to her. And it clearly tainted the way she addressed the rest of the motion. So in our view, the, the, if the court had had a clear mind to be able to compartmentalize her idea that she has something new, like you should have stopped the hearing right then and should have said, look, there's this issue that I have that we have to get cleared up before I can go and proceed on the merits of the, of the motion. So motion for finding joint liability, that is. So stop right now. And we'll, we'll address the issue that I have this newly discovered evidence in her mind. It was newly discovered. I think it wasn't newly discovered because the court had thought about it more and looked at, we had a chance to respond. She had realized it wasn't new and that she should have, she'd already considered this and already had ruled that CC was still in bad faith, even after considering the same new, what she thought was new evidence. So of course she would put the brakes on to resolve the idea of whether, you know, whether there, whether it was bad faith or whether she really needed to unwind her previous ruling. And then we could have had that knowledge and we could have formatted our motion differently to take into account that new playing field, new level of the playing field, because either the court found that, well, no, it really wasn't something I had to unwind or yes, I did have to unwind and we could deal with it then. But rather than just have this new evidence hanging out there that was affecting the judge that we couldn't address, denied its due process and prevented the judge from really considering the thing properly. So walk me through your due process argument. Well, so when we filed the motion, CT had been found in bad faith because of the connection between AZAR and CT and AZAR in 1429. So that was the premise we had. And that was the evidence that we had going in. And that's why we even looked at joint liability with CT by these other parties. And so the, when the court found this, which she thought was new evidence, which wasn't new, she then felt like there's new, something else to be considered that the judge was considering and was definitely in her mind. And as you can read through the transcript of the hearing, even at the end, she invites the parties to file a motion, which CT did to basically revisit her July 23rd, 2019. So by considering that new piece of evidence without us getting a chance to address it, that didn't give us notice and opportunity to be heard on the new evidence. Didn't you have a chance to address it when they filed the motion? No, we filed the motion. I mean, I'm sorry. They did not address it at all during the original motion for bad faith. They didn't submit this evidence. They could have done. The CT-AZAR connection was known at the time we went through the trial to determine bad faith. The court did a fund against us usually and then motion for reconsideration granted in part our motion to find CT bad faith. Right. So, and that was based on in part, not entirely, but in part on the connection between that AZAR was a member of CT. Right. And then, sorry, go ahead. I'm asking a different question. I understand the timeline, but I don't understand why you didn't and you're into your five minutes. So maybe I'll ask this question and if you want to reserve, you can. I don't understand your bad faith or your due process argument because it looks to me like she, this was a iterative process and she raised the issue and you had the chance to address it at the end. Well, she didn't actually rule that CT was not in bad faith until after this, the hearing on this motion, CT brought a motion for reconsideration. And that's when she decided that CT, that the connection between CT and AZAR was invalid and therefore meant that she had to reverse her previous ruling. And so, so that we didn't get the chance to address during this hearing. And we, you know, it was a new curve ball, the idea that she was going to retract that piece of evidence that we had, that there was bad faith of CT at least. And because of this connection, this judicial admission. All right. I'll address any questions the other panel may have rather than reserve my time if necessary. No, you can reserve the rest then. Okay. Thank you. All right. Mr. Lapping, am I saying that correct? Yeah. Yes. Richard Lapping or defendant, or I guess, Pelle C. Copatata, which is Italian for whack-a-mole or something like that, CT and 1429 Grand Avenue. Is that really Italian for whack-a-mole? Yeah, loosely translated. I think that's how they came up with it. I'm saving that because I use whack-a-mole a lot. Okay, go ahead. I think this is a, this was a final order. You know, I look, I don't look at this kind of stuff all the time, but I came across Eden Place LLC versus Pearl, which seems to sort of go over the large, the scope of finality. And this is not a situation where this court has remanded and the Ninth Circuit is looking at it. The S&P Foods standard as to whether it resolves and seriously affects substantive rights and finally determines the discrete issue to which it is addressed. It clearly, there are three issues in the case below, and they are covered in three different motions. You're looking at the first motion, which is who is supposed to be liable. Council for Linton framed the issue by filing the motion addressed exclusively to who will be liable. There was then a second motion that we filed because we realized that there, the evidence that came in, in connection with council's motion, with Linton's motion, indicated a serious mistake of fact, and that my co-counsel, who had been sole counsel at the time, had confused the state of affairs, the ownership. And there was literally a finding at one point that there was no bad faith because there was no ownership interest by Jerry's Azar in DT. And the court decided, well, wait a minute. She had based that decision on the fact that council can't testify to facts, but then she came around to the notion urged by Mr. Linton that council had made a judicial admission and therefore it was a binding finding. And then demonstrably so, and in a motion that you don't have in front of you, the court decided that to grant a rule 60 motion and basically, as he says, unwind CT, what he really is talking about is finding that there's no bad faith and therefore, you know, a different standard applies. And then finally, the third motion is the amount, which is another discrete motion that is now below. But these are independent motions. Why is that different from partial summary judgment? I mean, you wouldn't come to us on a partial summary judgment. That affects rights. It determines issues. But you don't come to us and say, well, they've absolutely decided these three things, but they haven't decided these other three. I want an appeal now. That's totally interlocutory until we know that there's actually an assessment of damages. Why is this final? Well, yeah, look at Eden Place, your honor. There, they basically had a motion for relief from the automatic stay, which had been decided in favor of the debtor and had disturbed the assessment of the damages and basically said that even though no financial penalty or sanction has yet been assessed against Eden Place, the bankruptcy court's determination that Eden State is a substantive ruling with real effects. With real effects, the point is that here, if the court affirms this order, they're C.T., not C.T., but Azar, Shaheen, and 1429 Grant, they're out of the case. It's as if they got, there was a motion to dismiss the case and they were dismissed from a litigation case, which is typically a final order. So even though damages have yet to be decided, they won't be decided against these three non-parties who went and attempted to bring into the case. That's a separate concept. And that's why we think, I think it's final and you can affirm this case. And I would think that the chief basis for affirming is that there were a lot of factual findings by the court in analyzing the alter ego question, which we walked through in our brief, and also the standard, which is abuse of discretion. Now it's widely known and expected that if one files an involuntary bankruptcy case and loses, the petitioner loses, and we have a problem that I have now, that attorney's fees will be assessed. It's expected. But the Ninth Circuit has said, ultimately, it's a question of discretion. And here, the trial judge, the bankruptcy judge, was extremely familiar, had gone through evidentiary hearings and multiple events, and had a very broad view of everything that's happened in this case, and came to the conclusion that she did. And I think that she clearly had the discretion to decide not to assess damages or attorney's fees against these three non-parties. And it wasn't just because she didn't have jurisdiction. She just felt, I think, as a matter of law under the Ninth Circuit precedents, and the, I think, Sixth Circuit precedent that adopted them, that there was just, you don't import joint and several tort liability, because the statute that governs here is not a tort statute. There's not, no one, you know, having screwed up, and the way the court is supposed to do, that's not a tort. And so, I think the judge, bankruptcy judge, correctly decided on the law that 303I does not pertain to non-petitioners. I think she correctly decided that she didn't have jurisdiction. And then finally, she decided that even if she did, and we're looking at this from the alter ego standpoint, that she made a bunch of factual findings that should not be overturned by an appellate court. And with that, I'll submit, unless there are any questions. Let me take you back to your Pearl case, because that is really from Stagg case, and I'm somewhat familiar with it. So, in that case, it was a post foreclosure action to put a debtor out of possession of the property, and I think there was, as I recall, there was impact on his personal property rights as well. So, there, there was real actual damage separate and distinct from any monetary award that might be awarded, because if the lender, or the foreclosing party, I can't remember whether it was the lender foreclosing or third party buying it at foreclosure, but if the stay issues weren't decided, they couldn't necessarily do anything with the property. I mean, they'd lost the right to control the property. What's the analogous loss of right here to make it final? The loss of the right, it's an imperfect analogy. Your Honor is absolutely right. The loss of rights that are permanent here is that the debtor, as the losing party on the motion below, lost the right to pursue any kind of claim for attorney's fees against 1429 Grant, Jerry's, Azar, or Mr. Shaheen. Those rights are gone. They were decided. And that issue is decided. Okay. Yes. But in the meantime, he can't collect anything until it's determined that he has something to collect anyway. So, why in the interim is he any better or worse off? I mean, I understand he's, an issue has been decided adversely. I got that. But I'm trying to find what's the analogous imposition, because again, if, if in Pearl, you have a, you have an impact on their property rights, that is real and present today, they can't do something potentially with property or they can't, I don't know. What's this doesn't, it seems to me that until we know what the money is, the fact that they can't collect it from somebody is of no moment. And once we know what the money is, then you have an appeal. So I don't know why all these issues don't go up at that same time. Well, I think the motion is, I, unbeknownst to you, of course, because you don't have the There was a motion filed in the court, basically saying, these are the attorney's fees. And they, our view is they, they would be assessed against the one remaining party, possibly the second person, but really against CT, because CT remains in the case, it was the petitioner. And as the petitioner, it's liable for the attorney's fees, which need to be reviewed by the court and discussed. But at the end of the day, CT will become liable for attorney's fees. But what the order in front of you today established is that these other parties are not going to be liable. No matter what happens with the motion to assess the attorney's fees, these three are out. And that's final. So let me let me ask you a question. So she first decided that personal jurisdiction didn't occur. The court didn't get personal jurisdiction because service was improper. So because of that, there was no jurisdiction over these parties. Could she then go ahead and decide to the secondary issues? Was it appropriate for her to reach the substantive issues? Yes. Shouldn't we just say personal jurisdiction, you failed, it's a do over, serve it again? Well, yes, that's what happened in Macmillan. And Macmillan, the circuit court basically said, look, you can't use a motion motion practice to bring new parties into the to the bankruptcy court. And they refiled it. And they did exactly that. They filed an adversary proceeding. And then the bankruptcy court reviewing the entire situation, including precedent for the Ninth Circuit, decided that even though the parties were now in front of the court appropriately, there was no ability to assess them for liability under 303. And that was the two. All right, Judge Brand, any additional questions? Judge Klein. All right. Thank you very much for your good arguments. And we'll go back to Mr. Flores. You have a three. How much do you have for his additional time for rebuttal? I thought he had. Yeah, three minutes. Thank you, Your Honor. Yeah, I just like to address a couple of things that came up here. I think Judge Brand is exactly right, that the judge went further than she needed to because the other courts that have brought this up, like the Rosenberg case as well, exactly that if the courts thought that the jurisdiction wasn't proper, they stopped there and send it back. And they both of those cases, Macmillan and Rosenberg, they refiled it. And the court in Rosenberg granted damages, but in Macmillan did not. And I think that the court here has applied the wrong standard. Our papers spell out what we think was wrong with everything the judge did after not finding jurisdiction. She went on to find that we hadn't served her properly. She went on to find that we hadn't established facts to prove alter ego. But the Macmillan case didn't address alter ego. The Macmillan case was just about joint venturer and code court fees or liability. So that issue was not even before the Macmillan court. And joint fees, alter ego is a little different because it basically substitutes the party in for the new party in for the old party. And so it's as if you're just naming the correct party now. So it's not adding someone who's not a petitioner because in fact, the new party of the alter ego is actually the petitioner. So this distinction between petitioner and non-petitioner, whether the judge can reach them, it kind of falls apart when you have an alter ego claim because we're claiming that this person is actually the petitioner. In this case, Azar is the petitioner and 1429 is the petitioner and not CT. CT is just a straw man, a shell corporation. It didn't have any other business, didn't do anything other than serve this purpose to hide the name and the identity of the actual party that was directing the litigation and would receive the benefit of the litigation, the benefit of the assignment of the judgment that they had used to get into the case. So let's see, there's one other issue here. Okay, the wrong standard. So yeah, so the court below applied the standard, basically saying that no one other than a petitioner can be found liable under 303 I-1R2. And that's just wrong under the wavelength case, which is another BAP case that really addresses both these issues about whether a motion is sufficient or you have to file an adversary proceeding. In re wavelength was just a motion. It wasn't initially brought up or discussed greatly, but it's clear that it was a motion that the opinion does state that. And then it does state that persons who caused the filing can be found liable. And those are the two individuals that were found to be in bad faith in addition to the actual petitioner. So I think the wavelength case basically handles two of the issues that Mr. Lapping discussed and in our favor and as BAP president. And I'll stop there. All right. Your time's about up. So that's a good place to stop. All right. Thank you for your good arguments. This matter will be submitted. Thank you, Your Honor. Thank you.
judges: Taylor, Brand, Klein